# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Petitioner,
v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
EDGARDO ORTIZ GUEVARA,
Real Party in Interest.

S283305

Second Appellate District, Division Six
B329457

Santa Barbara County Superior Court
1183843

---

October 9, 2025

Justice Evans authored the opinion of the Court, in which Justices Liu, Kruger, Groban, and Jenkins concurred.

Justice Corrigan filed a dissenting opinion, in which Chief Justice Guerrero concurred.

---

PEOPLE v. SUPERIOR COURT (GUEVARA)

S283305

Opinion of the Court by Evans, J.

In 2009, the trial court sentenced Edgardo Ortiz Guevara to an indeterminate term of 28 years to life following his third strike conviction, as then required by the "Three Strikes" law. (See Pen. Code, former §§ 667, subds. (b)–(i), 1170.12, subd. (c)(2).)[1] In 2012, voters enacted the Three Strikes Reform Act of 2012. (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012) (Reform Act or Act).) The Reform Act limited indeterminate life sentences for nonserious, nonviolent third strike offenses. Under the Reform Act, a defendant convicted of a nonserious, nonviolent third strike instead receives a sentence of double the term of the current felony. (§ 1170.12, subd. (c)(1), (2)(C).) The Reform Act authorizes defendants "presently serving an indeterminate term of imprisonment" pursuant to the Three Strikes law for a third nonserious, nonviolent strike to file a petition for a recall of sentence and request resentencing in accordance with the Reform Act. (§ 1170.126, subd. (a).) The Reform Act provides that courts may deny petitions of defendants determined to pose an unreasonable risk of danger to public safety. (*Id.*, subd. (f).) The trial court denied Guevara's 2013 petition for resentencing under section 1170.126 after determining that his release would pose an unreasonable risk of danger to public safety.

_____

[1]     All further statutory references are to the Penal Code.

1

In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 728, §§ 1, 3), which retroactively invalidated certain sentencing enhancements and requires courts to recall and resentence defendants with invalid enhancements. In newly enacted Penal Code section 1172.75, the Legislature directed resentencing courts to apply "the sentencing rules of the Judicial Council and . . . any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (Stats. 2022, ch. 58, § 12; § 1172.75, subd. (d)(2).) "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).)

Guevara sought resentencing pursuant to section 1172.75 due to his now-invalid prior prison term enhancements. The trial court recalled Guevara's sentence and resentenced him on his third strike offense according to current law to a determinate term of eight years.[2] (§ 1170.12, subd. (c)(1), (2)(C).) The Santa Barbara District Attorney sought a writ of mandate and prohibition based on its view that section 1172.75 unconstitutionally amended section 1170.126 of the Reform Act. Appearing as amicus curiae in the Court of Appeal, the Attorney General conceded that the trial court correctly held that section 1172.75 did not unconstitutionally amend section 1170.126. The

---

[2] The trial court also resentenced Guevara to a concurrent 180-day term for the child endangerment misdemeanor, with credit for time served.

2

Court of Appeal majority rejected the Attorney General's concession and held that the trial court's construction of section 1172.75 unconstitutionally amended voter-enacted section 1170.126.

We granted review to consider whether Penal Code section 1172.75, by permitting recall and resentencing of indeterminate third strike sentences, amends Penal Code section 1170.126, in violation of article II, section 10 of the California Constitution. We hold that, as a matter of constitutional avoidance, section 1172.75 incorporates section 1170.126's discretionary public safety override as a condition for nonserious, nonviolent third strike offenders to obtain resentencing under the revised penalty provisions of the Reform Act. Because section 1172.75 and section 1170.126, thus interpreted, operate harmoniously, the revised penalty provisions of the Reform Act may constitutionally apply at a resentencing pursuant to section 1172.75.

## I. BACKGROUND

### A. Statutory Background.

As originally enacted, the Three Strikes law provided that a defendant previously convicted of a serious or violent felony would be sentenced to a term of "twice the term otherwise provided as punishment for the current felony conviction." (Former § 1170.12, subd. (c)(1), added by Prop. 184, as approved by voters, Gen. Elec. (Nov. 8, 1994).)[3] For defendants previously

---

[3] "Enacted 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses' (Pen. Code, former § 667, subd. (b), as amended by Stats.1994,

convicted of two or more serious or violent felonies, upon conviction of any subsequent felony, the Three Strikes law provided for sentencing of "an indeterminate term of life imprisonment with a minimum term of" at least 25 years. (Former § 1170.12, subd. (c)(2)(A).)

In 2012, voters enacted the Reform Act (Proposition 36), which amended state law to authorize indeterminate third strike life sentences only when the third felony conviction is "serious or violent," subject to enumerated disqualifying factors. (§ 1170.12, subd. (c)(1), (2)(C).) Instead of receiving an indeterminate term for a subsequent nonserious, nonviolent felony, the Reform Act provides that, under current law, defendants will be sentenced to "twice the term otherwise provided as punishment for the current felony conviction." (*Id.*, subd. (c)(1).)

The Reform Act's prospective provisions exclude certain defendants from this change in law. A "defendant does not qualify for this ameliorative change, however, if his current offense is a controlled substance charge involving large quantities ([§ 1170.12], subd. (c)(2)(C)(i)), one of various enumerated sex offenses (*id.*, subd. (c)(2)(C)(ii)), or one in which he used a firearm, was armed with a firearm or deadly weapon,

---

ch. 12, § 1, pp. 71, 72), the Three Strikes law 'consists of two, nearly identical statutory schemes.' [Citation]  The first of these schemes was enacted by the Legislature in March 1994.  (Pen. Code, former § 667, subds. (b)–(i).)  The second was enacted by ballot initiative in November of the same year.  (Pen. Code, former § 1170.12, added by Prop. 184, as approved by voters, Gen. Elec. (Nov. 8, 1994) (Proposition 184).)  The two statutes differ only in minor respects not relevant here."  (*People v. Conley* (2016) 63 Cal.4th 646, 652 (*Conley*).)

or intended to cause great bodily injury (*id.*, subd. (c)(2)(C)(iii)). The ameliorative provisions of the Reform Act also do not apply in cases in which the defendant was previously convicted of certain enumerated offenses, including those involving sexual violence, child sexual abuse, homicide or attempted homicide, solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony punishable by life imprisonment or death. (§ 1170.12, subd. (c)(2)(C)(iv)(I)– (VIII).)" (*Conley*, *supra*, 63 Cal.4th at p. 653.) The prosecution bears the burden of pleading and proving disqualifying factors under section 1170.12 beyond a reasonable doubt. (*People v. Frierson* (2017) 4 Cal.5th 225, 234 (*Frierson*).)

Retrospectively, the Reform Act establishes a resentencing procedure "intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) Section 1170.126, subdivision (b) provides that defendants "may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause." (*Id.*, subd. (b).) Upon receiving a recall petition, the statute directs courts to determine whether a petitioner is eligible for resentencing. (*Id.*, subd. (f).) The People bear the burden of establishing ineligibility beyond a reasonable doubt. (*Frierson*, *supra,* 4 Cal.5th at p. 229.) If the defendant is eligible, he or she "shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public

safety." (§ 1170.126, subd (f).) The People must prove the facts upon which the court's public safety determination is based by a preponderance of the evidence. (*Frierson*, *supra,* 4 Cal.5th at p. 239.) Relevant factors for the court's public safety determination include a defendant's criminal conviction background, disciplinary history, and rehabilitative record. (§ 1170.126, subd. (g).) Section 1170.126, subdivision (k) establishes, with respect to these retrospective provisions, that "[n]othing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant." (*Id.*, subd. (k).)

Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) (Stats. 2019, ch. 590, § 1) prospectively limited the application of one-year prior prison term enhancements to individuals convicted of sexually violent felonies. In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 728, §§ 1, 3), which codified Penal Code section 1171.1, later renumbered without substantive change as section 1172.75. (Stats. 2022, ch. 58, § 12.) Effective January 1, 2022, Senate Bill No. 483 "retroactively appl[ied]" Senate Bill No. 136 to persons "currently serving a term for a judgment that includes" such an enhancement. (Stats. 2021, ch. 728, § 1; § 1172.75, subd. (b).)

Under Senate Bill No. 483, where a now-invalid enhancement was imposed, "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).)[4] Similar

---

[4] Effective January 1, 2025, section 1172.75, subdivision (f) establishes that defendants "convicted of a sexually violent offense . . . and sentenced to death or a life term without the

to the Reform Act, Senate Bill No. 483 restricts resentencing in the event that a lower sentence poses a risk to public safety. However, Senate Bill No. 483 applies a different burden of proof. The resentencing "shall result in a lesser sentence than the one originally imposed . . . unless the court finds *by clear and convincing evidence* that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1), italics added.) The statute directs that the resentencing "court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ *Id.*, subd. (d)(2).)

### B. Facts.

In 2009, Guevara was convicted of felony corporal injury to a coparent and misdemeanor child endangerment under section 273.5, subdivision (a) and section 273a, subdivision (b). (*People v. Guevara* (Sept. 13, 2010, B218153) [nonpub. opn.], typed opn. at p. 1 (*Guevara I*).) Guevara admitted two prior strike convictions within the scope of the Three Strikes law and three prior prison terms. (*People v. Superior Court* (*Guevara*) (2023) 97 Cal.App.5th 978, 982 (*Guevara II*); §§ 667, subd. (e)(2)(A); 1170.12, subd. (c)(2)(A); former § 667.5, subd. (b).) Because of Guevara's prior strike convictions, he was sentenced to 25 years to life under the original Three Strikes law for the felony, with three one-year prior prison term enhancements under section 667.5, subdivision (b). On direct review, the Court of Appeal affirmed. (*Guevara I, supra,* typed opn. at p. 1.)

---

possibility of parole" are ineligible for recall and resentencing. (Stats. 2024, ch. 979, § 2; § 1172.75, subd. (f).)

In 2013, after the passage of the Reform Act, Guevara petitioned for resentencing under section 1170.126 because his third strike conviction does not qualify as a violent or serious felony under the Three Strikes law as amended by the Reform Act. The trial court denied Guevara's petition, concluding his release would pose an "unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) The Court of Appeal affirmed in 2016. (*People v. Guevara* (Apr. 7, 2016, B262954) [nonpub opn.], typed opn. at p. 2.)

In 2023, the Department of Corrections and Rehabilitation identified Guevara as a "person[] in their custody currently serving a term for a judgment that includes" now-invalid prior prison term enhancements. (§ 1172.75, subd. (b).) In the trial court, Guevara argued that because section 1172.75 required that his sentence be recalled and that he be resentenced "apply[ing] any other changes in law that reduce sentences," he was entitled to the application of the Reform Act's prospective change in law. (*Id.*, subd. (d)(2).) Guevara thus argued he should be resentenced to a determinate term of eight years, double the upper term for his current felony. (*Guevara II, supra,* 97 Cal.App.5th at p. 981.) The People, represented by the Santa Barbara District Attorney, agreed that the prior prison term enhancements should be stricken, but argued that, to the extent section 1172.75 required setting aside the third strike sentence, it unconstitutionally amended section 1170.126. (*Guevara II,* at p. 983.) The trial court held that notwithstanding concerns about public safety, it was required by section 1172.75 to recall Guevara's sentence and resentence him under current law, including section 1170.12, subdivision (c). Accordingly, the trial court sentenced Guevara to a determinate term of eight years

for the spousal abuse count (double the upper term of four years).

The People sought a stay, a writ of mandate or prohibition to direct the trial court to reinstate Guevara's indeterminate sentence, and appealed the resentencing. (*Guevara II, supra,* 97 Cal.App.5th at p. 983.) The Court of Appeal granted a temporary stay and issued an order to show cause. (*Id.* at p. 988.) In an informal response to the petition for a writ of mandate and in a subsequent amicus curiae brief, the Attorney General conceded that section 1172.75 is a permissible alternative resentencing method for third strike offenders, and upon recall, defendants like Guevara were no longer "presently serving" indeterminate third strike sentences.

The Court of Appeal reversed. Writing for the majority, Justice Gilbert, joined by Justice Yegan, concluded that the trial court's interpretation of section 1172.75 unconstitutionally amended the Reform Act. Under Guevara's interpretation of section 1172.75, "contrary to the express words of section 1170.126, subdivision (f), the trial court must release Guevara even though his release has been found to pose an unreasonable risk of danger to public safety." (*Guevara II, supra,* 97 Cal.App.5th at p. 984.) Reasoning that this interpretation "would result in a wholesale repeal of section 1170.126 for those inmates serving an indeterminate term with a prior prison enhancement," the majority held that Guevara's interpretation "unconstitutionally eliminates the public safety" element of section 1170.126. (*Guevara II,* at p. 985.) The court concluded that under section 1172.75, "Guevara's three prior prison term enhancements were vacated, but not his 25-year-to-life term mandated by the Reform Act." (*Guevara II,* at p. 986.)

In dissent, Justice Baltodano argued that section 1172.75 did not unconstitutionally amend section 1170.126. Justice Baltodano reasoned that section 1170.126 applies "exclusively" to persons "presently serving" an indeterminate term pursuant to the original Three Strikes law and who sought relief under Proposition 36, not to defendants whose sentences had been recalled under separate resentencing statutes like section 1172.75. (*Guevara II, supra,* 97 Cal.App.5th at p. 991 (dis. opn. of Baltodano, J.).)

We granted review to consider whether the revised penalty provisions of the Reform Act may constitutionally apply at a resentencing pursuant to Penal Code section 1172.75 of a nonserious, nonviolent third strike offender. [5]

## II. DISCUSSION

The Santa Barbara District Attorney, respondent in this court, accepts that section 1172.75 is a permissible act of legislative power to the extent that it allows for recall and resentencing to eliminate now-invalid enhancements for prior prison terms. However, to the extent that section 1172.75 allows defendants to avoid the petition process established by the Reform Act to obtain relief from an indeterminate third

---

[5] The narrow issue presented in this case is whether the revised penalty provisions of the Reform Act may constitutionally apply at a resentencing pursuant to section 1172.75 of a nonserious, nonviolent third strike offender whose strikes remain intact. We do not consider or resolve whether trial courts may strike prior strike offenses pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and section 1385, subdivision (a) at a section 1172.75 resentencing. (*People v. Rogers* (2025) 108 Cal.App.5th 340.)

strike sentence, respondent urges that it is an unconstitutional legislative amendment of Proposition 36. Real Party in Interest Guevara and the Attorney General disagree. They argue that the trial court's application of section 1172.75 to this case leaves the Reform Act intact and is therefore constitutional.

We solicited supplemental briefing regarding whether construing section 1170.126's discretionary public safety override as applicable at a resentencing pursuant to section 1172.75 would harmonize the statutory schemes and eliminate any constitutional doubt. Real Party in Interest proposes construing section 1172.75, subdivision (d)(2)'s instruction to apply "changes in law that reduce sentences or provide for judicial discretion" as incorporating section 1170.126's discretionary public safety determination at a nonserious, nonviolent third strike offender's resentencing pursuant to section 1172.75. The Attorney General agrees to the extent Guevara proposes interpreting "changes in law that reduce sentences" as incorporating the Reform Act's public safety inquiry.[6] Respondent contends that notwithstanding any such harmonization, applying the revised penalty provisions of the Reform Act through section 1172.75 would unconstitutionally amend the Reform Act.

### A. Legal Standard.

#### 1. Amendment of Voter Initiatives.

We begin with the governing standards. "The Legislature may amend or repeal an initiative statute by another statute

---

[6] Real Party in Interest and the Attorney General do not concede that constitutional avoidance requires such an interpretation of section 1172.75.

that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c); accord, *People v. Rojas* (2023) 15 Cal.5th 561, 568 (*Rojas*).) The Reform Act allows legislative amendment "[b]y statute passed in each house of the Legislature, by rollcall entered in the journal, with two-thirds of the membership and the Governor concurring." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 11, subd. (a), p. 110.) As the parties agree, because section 1172.75 was enacted by less than a two-thirds majority of the Legislature, an application of the statute that amends section 1170.126 is unconstitutional.

A statute amends a voter initiative where it "prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571 (*Pearson*).) An amendment "change[s] an existing initiative statute by adding or taking from it some particular provision." (*People v. Cooper* (2002) 27 Cal.4th 38, 44.) But "this does not mean that any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes." (*Pearson, supra,* 48 Cal.4th at p. 571.) "[T]he Legislature remains free to enact laws addressing the general subject matter of an initiative, or a 'related but distinct area' of law that an initiative measure 'does not specifically authorize *or* prohibit.'" (*People v. Kelly* (2010) 47 Cal.4th 1008, 1026, fn. 19.)

### 2. *Statutory Interpretation Principles.*

Whether section 1172.75 unconstitutionally amends section 1170.126 is a question of statutory interpretation, which we review de novo. "When we interpret an initiative, we apply

the same principles governing statutory construction.  We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole."  (*Pearson, supra,* 48 Cal.4th at p. 571.)  " ' "[T]he statutory language is generally the most reliable indicator of legislative intent." ' "  (*People v. King* (2006) 38 Cal.4th 617, 622.)  "[O]ur '[t]ask is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.' "  (*Robert L. v. Superior Ct.* (2003) 30 Cal.4th 894, 901 (*Robert L.*).)

"If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language."  (*Pearson, supra,* 48 Cal.4th at p. 571; accord, *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  Where the text is ambiguous, courts may consider " ' "other indicia of the voters' intent," ' " including " ' "the analyses and arguments contained in the official ballot pamphlet." ' "  (*Robert L., supra,* 30 Cal.4th at p. 901.)

Our background principles of statutory interpretation also demonstrate respect for the legislative process.  " '[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' "  (*People v. Valencia* (2017) 3 Cal.5th 347, 357 (*Valencia*).)  This may involve " 'reconcil[ing] seeming inconsistencies in' " statutory schemes.  (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805 (*Pacific Palisades*).)  And because we presume "the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers," " ' "a court, when faced with an ambiguous statute that

raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity." ' " (*Miller v. Municipal Court of Los Angeles* (1943) 22 Cal.2d 818, 828; *People v. Leiva* (2013) 56 Cal. 4th 498, 506–507 (*Leiva*).)

### B. Voters Did Not Intend for the Reform Act To Be the Sole Vehicle for Nonserious, Nonviolent Third Strike Defendants To Seek Recall and Resentencing.

Respondent argues the Reform Act is the sole avenue for third strike defendants to pursue recall and resentencing relief from an indeterminate term of imprisonment imposed pursuant to the Three Strikes law. Respondent cites language from the Reform Act indicating that its petition process is "intended to apply *exclusively* to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a), italics added.) Respondent argues that this language means "[t]he voters intended that the Reform Act serve as the exclusive means for recall and resentencing persons serving a three-strikes sentence." We disagree. "The words of the statute must be construed in context." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 (*Dyna-Med*).) "Exclusively" modifies "persons presently serving an indeterminate term of imprisonment." (§ 1170.126, subd. (a).) While the statutory text thus describes the petition process as *exclusively* available to certain persons, it does not characterize the procedure as the *exclusive means of relief* available to those persons. Rather, section 1170.126, subdivision (b) establishes

that defendants presently serving an indeterminate third strike sentence "*may* file a petition for recall"; it does not *require* such a filing to obtain relief.  (§ 1170.126, subd. (b), italics added.)

The Reform Act's savings clause bolsters this interpretation.  Section 1170.126, subdivision (k) establishes that alternative "rights or remedies" are consistent with the Reform Act.  The subdivision establishes that "[n]othing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant."  (§ 1170.126, subd. (k).)  Subdivision (k) guarantees that defendants for whom section 1170.126 is *an* available remedy are nonetheless entitled to access "rights or remedies" available through other mechanisms.  The text of section 1170.126 thus expressly indicates the voters did *not* intend for the petition process to be the sole avenue for defendants sentenced to an indeterminate term of imprisonment under the original Three Strikes law to seek resentencing relief.

A conclusion that section 1170.126's petition process is the "exclusive means" for defendants like Guevara to obtain relief from an indeterminate third strike sentence would require reading section 1170.126, subdivision (k) out of the Reform Act.  But the "voters should get what they enacted, not more and not less."  (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114.)  A better reading " 'accord[s] significance . . . to every word, phrase and sentence' " of the statute.  (*Valencia, supra,* 3 Cal.5th at p. 357, quoting *Dyna-Med, Inc., supra,* 43 Cal.3d at p. 1387.)

Notably, the majority below did not grapple with the role of section 1170.126, subdivision (k).  Respondent, for its part, concedes that subdivision (k) permits resentencing of defendants subject to section 1170.126 by *some* alternative

means. This concession is well taken. For example, as we observed in *Conley, supra,* 63 Cal.4th at p. 661, a defendant may seek relief for reasons unrelated to the Reform Act by filing a petition for habeas corpus. Subdivision (k) thus evinces a legislative intent that a petition for a recall of sentence under section 1170.126 is not meant to displace "other legal remedies to which [defendants] might be entitled (e.g., petition for habeas corpus)." (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 178.)

As respondent acknowledges, other recall and resentencing avenues were available to defendants like Guevara at the time of the enactment of Proposition 36. For example, former section 1170, subdivision (d) permitted recall of a sentence upon recommendation of the Secretary of the Department of Corrections and Rehabilitation "at any time." (Stats. 2012, ch. 43, § 27.) Recall upon recommendation of the Board of Parole Hearings was likewise permitted "at any time." (*Id*.) Superior courts could also recall a defendant's sentence "within 120 days of the date of commitment on its own motion" for "any reason rationally related to lawful sentencing." (*Id*.; *Dix v. Superior Court* (1991) 53 Cal.3d 442, 456.) Likewise, former section 1170, subdivision (e) allowed for the recall of sentences for inmates with certain severe medical conditions. (Stats. 2012, ch. 43, § 27.) As "[t]he voters are presumed to have been aware of existing laws at the time the initiative was enacted," we assume the voters anticipated other avenues for recall and resentencing would remain available to defendants subject to section 1170.126. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048.)

Concluding that the Reform Act was the exclusive means to obtain sentencing relief would require ignoring section 1170.126, subdivision (k) and finding the voters, by enacting

Proposition 36, impliedly repealed the application of these statutory provisions to third strike offenders. But "all ' " ' "presumptions are against a repeal by implication" ' ' " ' [citation], including partial repeals that occur when one statute implicitly limits another statute's scope of operation." (*Even Zohar Constr. & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal. 4th 830, 838.) Accordingly, an initiative should be construed as repealing a prior statute " ' " ' "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " ' " ' " (*State Department of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955–956.) The Reform Act was expressly intended as an act of ameliorative legislation. (*Conley*, *supra,* 63 Cal.4th at p. 658 ["There can be no doubt that the Reform Act was motivated in large measure by a determination that sentences under the prior version of the Three Strikes law were excessive"].) An assumption that an initiative intended to curb unduly harsh sentences silently repealed all other coexisting applications of ameliorative relief statutes merely because relief might be available to the same defendants is untenable.

Nor does section 1170.126, subdivision (k) solely protect alternative rights and remedies that existed at the time of the enactment of the Reform Act. "[W]here a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference . . . in the absence of a clearly expressed intention to the contrary. [Citations] . . . [W]here the reference is general instead of specific, such as a reference to a system or body of laws or to the general law

relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time." (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58–59 (*Palermo*); see also *In re Jovan B.* (1993) 6 Cal.4th 801, 816; *Rojas, supra,* 15 Cal.5th at p. 570.)

The statutory reference to "any rights or remedies otherwise available to the defendant" is a prototypical reference to a general "body of laws." (§ 1170.126, subd. (k); *Palermo, supra,* 32 Cal.2d at p. 59.) It neither invokes specific statutory provisions nor describes limited classes of remedies. Rather than referencing relevant preexisting remedies, such as former section 1170, subdivision (d) or section 1473, the voters employed broad language — protecting "*any* rights or remedies otherwise available." (§ 1170.126, subd. (k), italics added.) This language is readily understood as a reference "to the general law relating to the subject in hand." (*Palermo*, *supra*, 32 Cal.2d at p. 59.) Thus, "the referring statute takes the law . . . referred to not only in their contemporary form, but also as they may be changed from time to time." (*Ibid.*)

Nor, despite Real Party's assertions, does *Conley*, *supra*, 63 Cal.4th 646 suggest section 1170.126 is the exclusive remedy for nonserious, nonviolent third strike offenders. In *Conley,* we considered whether the Reform Act's change in law applied automatically to defendants "presently serving" indeterminate, nonfinal sentences pursuant to the Three Strikes law. (*Id.* at p. 651.) Because section 1170.126 "create[d] a special mechanism" for persons "presently serving" sentences to access the "benefits of the Act retroactively," we found inapplicable the traditional *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) presumption that ameliorative reforms automatically apply on

direct appeal. (*Conley, supra,* 63 Cal.4th at pp. 657–658.) We likewise rejected petitioner's argument that section 1170.126, subdivision (k) compelled a different result, observing that "[s]ubdivision (k) contains no indication that automatic resentencing — as opposed to, for example, habeas corpus relief — ranks among the 'rights' the electorate sought to preserve." (*Id.* at p. 661.)

*Conley*'s reasoning does not compel the conclusion that section 1170.126 is the exclusive remedy to resentence third strike offenders. The defendant in *Conley* invoked the *Estrada* presumption, seeking to apply ameliorative laws on direct review. Guevara instead relies upon a legislative statute, independent of section 1170.126, which requires a court, upon determining that "the current judgment includes" a now-invalid enhancement, to "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) This separate statute constitutes a separate "right[] or remed[y]" protected by subdivision (k), unlike the untethered "automatic resentencing" which the defendant in *Conley* attempted to use to circumvent the section 1170.126 petition process. (§ 1170.126, subd. (k); *Conley, supra,* 63 Cal.4th at pp. 656–657.)

The dissent suggests that the section 1172.75 resentencing process, initiated by a notice from the California Department of Corrections and Rehabilitation and not by the defendant, is similarly "automatic." (Dis. opn. of Corrigan, J., *post*, at pp. 3, 12.) However, the construction harmonizing section 1172.75 and section 1170.126 we adopt bears little similarity to the rule of automatic appellate reversal proposed by the defendant in *Conley*. Resentencing is not "automatic" as in *Conley* because, as we discuss below, Guevara must satisfy

the substantive requirements of section 1170.126 in order to be resentenced.

But defendant's reliance on *Conley* is also misplaced. Defendant argues that our acknowledgement in *Conley* that section 1170.126, subdivision (k) protects alternative rights and remedies supports a finding of entitlement to relief under section 1172.75 *without* a discretionary public safety determination. (*Conley, supra,* 63 Cal.4th at pp. 661–662 [contrasting defendant's request for "automatic resentencing" with a right to obtain resentencing through another vehicle, such as habeas corpus].) Our recognition in *Conley* that section 1170.126 is not the exclusive means of relief for indeterminate third strike offenders does not settle whether the Reform Act might nonetheless impose substantive requirements applicable to new resentencing mechanisms, such as section 1172.75, that require the incorporation of "changes in law" like the Reform Act. (§ 1172.75, subd. (d)(2).) The legislative history of Proposition 36 suggests the voters likely understood the discretionary public safety override of section 1170.126 as one such substantive requirement. At a minimum, interpreting section 1172.75 to alter the Reform Act's substantive prerequisite to relief — a discretionary public safety determination — raises substantial constitutional questions. In light of the constitutional concerns raised by Guevara's interpretation, we hold that section 1172.75, when applied to Third Strike defendants seeking relief from their indeterminate terms under the Reform Act's ameliorative provisions, incorporates the substantive requirements of section 1170.126.

### C. As a Matter of Constitutional Avoidance, Section 1172.75 Incorporates Section 1170.126's Discretionary Public Safety Determination.

Pursuant to section 1172.75, when a court determines a defendant's judgment includes a now-invalid prior prison term enhancement, the judgment is recalled, and the defendant is resentenced. (§ 1172.75, subd. (c).) At resentencing, section 1172.75 provides that courts shall "apply any other changes in law that reduce sentences or provide for judicial discretion." (*Id.*, subd. (d)(2).) Guevara argues that the resentencing court must apply the provisions of the Reform Act which reduce his punishment, namely that defendants convicted of a nonserious, nonviolent third strike receive sentences of double the term of the current felony, instead of an indeterminate term. (§ 1170.12, subd. (c)(1), (2)(C).) However, he proposes that he is not bound by the Reform Act's *other* requirements, delineated in section 1170.126, because he is neither "presently serving" an indeterminate third strike sentence nor filing a petition for resentencing under that section. The language in section 1172.75, subdivision (d)(2) is ambiguous. Guevara's proposed construction threatens to undermine the voters' intent in passing the Reform Act. Consistent with our mandate to construe statutes, where reasonably possible, to eliminate constitutional doubt, we interpret section 1172.75 as incorporating section 1170.126's discretionary public safety override, as proposed by Real Party in Interest and the Attorney General.

### 1. Constitutional avoidance principles.

" 'If a statute is susceptible of two constructions, one of which will . . . raise serious and doubtful constitutional questions, the court will adopt the construction which, without

doing violence to the reasonable meaning of the language used, will render it . . . free from doubt as to its constitutionality.' " (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 548 (*Wendland*).) In these circumstances, courts have a " ' "duty . . . to construe [the] statute as to save its constitutionality." ' " (*Palermo, supra,* 32 Cal.2d at p. 60.) "[A] statute should not be construed to violate the Constitution ' " "if any other possible construction remains available.' " ' " (*People v. Garcia* (2017) 2 Cal.5th 792, 804 (*Garcia*); accord, *People v. Miracle* (2018) 6 Cal. 5th 318, 339 (*Miracle*) [" '[A] statute must be construed, if reasonably possible, in a manner that avoids a serious constitutional question' "].)

"This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that [the Legislature], like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that [the Legislature] intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it." (*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council* (1988) 485 U.S. 568, 575 (*DeBartolo*); see also *Garcia, supra,* 2 Cal.5th at p. 804, quoting *DeBartolo,* at p. 575.)

### 2. *Constitutional doubt.*

Proposition 36's legislative history suggests the voters were distinctly aware of the threat to public safety posed by any blanket repeal of the Three Strikes Law. Ballot materials assured voters that the Reform Act's public safety valve addressed these concerns. Ballot arguments in support of the initiative told voters: "Criminal justice experts and law enforcement leaders carefully crafted Prop. 36 so that truly

dangerous criminals will receive *no benefits whatsoever from the reform*." (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 36, p. 52, italics added.) Likewise, the analysis of the Legislative Analyst explained that a court would be required to resentence otherwise eligible defendants "*unless* it determines that resentencing the offenders would pose an unreasonable risk to public safety. . . [o]ffenders whose requests for resentencing are denied by the courts would continue to serve out their life terms . . . ." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 36 by Legis. Analyst, p. 50, italics added.) The Attorney General's Official Title and Summary of the Reform Act similarly described the measure as "[a]uthoriz[ing] re-sentencing for offenders currently serving life sentences if third strike conviction was not serious or violent and judge determines sentence does not pose unreasonable risk to public safety." (Voter Information Guide, Gen. Elec., supra, Official Title and Summary of Prop. 36, p. 48.)

There can be no question that the voters who enacted the Reform Act were focused on reforming Three Strikes sentencing without undermining public safety. Section 1170.126 was "designed to strike a balance between the[] objectives of mitigating punishment and protecting public safety by . . . making resentencing subject to the trial court's evaluation of whether, based on their criminal history, their record of incarceration, and other relevant considerations, their early release would pose an 'unreasonable risk of danger to public safety.' " (*Conley, supra,* 63 Cal.4th at p. 658, quoting § 1170.126, subd. (f).) Proposition 36's legislative history suggests the voters understood that previously sentenced nonserious, nonviolent third strike offenders would not be entitled to resentencing on their indeterminate sentence if the

trial court, in its discretion, determined that resentencing would pose an "unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

Taking as a given that the voters were concerned with public safety, section 1170.126, subdivision (k) nonetheless guarantees that defendants entitled to seek relief under section 1170.126 may access "rights or remedies otherwise available."[7] (§ 1170.126, subd. (k).) As discussed above, the reading proposed by respondent would fail to " 'give force and effect to all of the[] provisions' " of section 1170.126. (*Pacific Palisades, supra,* 55 Cal.4th at p. 805.)

The dissent recognizes that the Reform Act contemplated "and was not intended to exclude other recognized rights and remedies like habeas corpus." (Dis. opn. of Corrigan, J., *post,* at p. 12.) Had Guevara had his sentence vacated or recalled under such vehicles, he might also have obtained resentencing under Proposition 36. (See *People v. Padilla* (2022) 13 Cal.5th 152 [current law, namely Prop. 57, applied at resentencing where defendant's sentence had been vacated in habeas corpus

---

[7] That ballot materials do not analyze every subdivision or application of an initiative does not provide license to read those provisions out of the enacted law. It was the Reform Act that was enacted, "not any of the documents within its legislative or initiative history. A statute, of course, must prevail over any summary. Were it not so, no statute could ever be enacted whole and entire. For every summary, by definition, is incomplete . . . The summary must yield to the statute, not the statute to the summary." (*In re Cervera* (2001) 24 Cal.4th 1073, 1079–1080; *Amador Valley Joint Union High School Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 243–244; *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 237 ["Ballot arguments are not legal briefs and are not expected to cite every case the proposition may affect"].)

proceedings].) The dissent claims that this case is different from vehicles such as habeas corpus, because Guevara "is not invoking a right or remedy 'otherwise available' to him through other potential avenues for relief. He is relying on Prop. 36 itself." (Dis. opn. of Corrigan, J., *post*, at p. 11.) Yet Guevara *is* relying on "other potential avenues for relief," namely resentencing under section 1172.75. To be sure, at resentencing under this section he invokes the reforms of Proposition 36. But a defendant serving an indeterminate Three Strikes term who obtained resentencing through a successful habeas corpus petition or via recall under former section 1170 subdivision (d) might also have invoked Proposition 36's ameliorative reforms at resentencing. (Cf. dis. opn. of Corrigan, J., *post*, at pp. 12–13 ["What the electorate did *not* contemplate is that the relief available under Prop. 36 would be available without going through the procedures mandated in section 1170.126"].) The dissent's distinction between resentencing as a result of a section 1172.75 proceeding and a resentencing through a successful habeas corpus petition or other resentencing mechanism is unavailing.

But adopting Real Party in Interest's reading of section 1172.75 — entirely exempting defendants from section 1170.126's discretionary public safety override — would arguably nullify the amendment provision of the Reform Act. Section 11 of the Reform Act establishes that "[e]xcept as otherwise provided in the text of the statutes, the provisions of this act shall not be altered or amended except by one of the following: (a) By statute passed in each house of the Legislature, by rollcall entered in the journal, with two-thirds of the membership and the Governor concurring; or (b) By statute passed in each house of the Legislature, by rollcall vote entered

in the journal, with a majority of the membership concurring, to be placed on the next general ballot and approved by a majority of the electors; or (c) By statute that becomes effective when approved by a majority of the electors."[8] (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 11.) Guevara's reading would allow the Legislature, by a simple majority, to eliminate section 1170.126's conditioning of relief upon a court's discretionary public safety determination, arguably contravening the Act's express amendment limitation. Indeed, by Guevara's logic, the Legislature could enact a statute, absent a two-thirds vote, providing for global recall and resentencing of all nonviolent, nonserious third strike sentences, without any consideration of public safety. Such an enactment would plainly contravene voter intent and the express amendment limitation provision of the Reform Act.

The dissent claims that, under our holding, the Legislature could, by a bare majority, simply "do away with" the good cause requirement for late-filed section 1170.126 petitions, or even do away with the petition process altogether. (Dis. opn. of Corrigan, J., *post*, at p. 14.) Not so. Such a direct amendment of the Reform Act would unquestionably create an unconstitutional conflict. As we discuss below, we merely hold that, when a defendant is being resentenced pursuant to a *separate* vehicle, section 1172.75 (one that did not exist at the

---

[8] The opening of the Reform Act's amendment limitation provision — "[e]xcept as otherwise provided in the text of the statutes" — introduces ambiguity regarding the proper interpretation of section 11 in relation to section 1170.126, subdivision (k), which we do not address in light of our interpretation of section 1172.75. (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 11.)

time that section 1170.126's two-year filing deadline had expired in the absence of good cause), allowing resentencing outside of the two-year window without establishing the good cause necessary to file a late section 1170.126 petition does not unconstitutionally amend the Reform Act.

Ultimately, we need not establish the precise relationship of section 1170.126, subdivision (k) and section 11 of the Reform Act. We decline to find a conflict between section 1172.75 and section 1170.126 where a " 'reasonably possible' " alternate interpretation " 'give[s] force and effect to all of their provisions' " and " 'reconcile[s] seeming inconsistencies in them.' " (*Miracle, supra,* 6 Cal. 5th at p. 339; *Pacific Palisades, supra,* 55 Cal.4th at p. 805.) Construing the discretionary public safety determination of section 1170.126 as applicable at a section 1172.75 resentencing " ' " ' "maintain[s] the integrity of both statutes," ' " ' " such that " ' " ' "the two may stand together." ' " ' " (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 574.)

> 3. *Interpreting section 1172.75 to avoid constitutional doubt.*

The Attorney General argues that construing section 1172.75, subdivision (d)(2)'s direction that resentencing courts apply "changes in law that reduce sentences" as incorporating section 1170.126's discretionary public safety override would eliminate any constitutional doubt. Under this reading, for defendants like Guevara, who was originally sentenced in 2009, the Reform Act itself is a "change[] in law that reduce[s] sentences." (§ 1172.75, subd. (d)(2).) The legislative history suggests the voters understood that where a court conducting a resentencing inquiry for Third Strike defendants serving an indeterminate term found relief "would pose an unreasonable

risk of danger to public safety," the defendant would not be entitled to resentencing. (§ 1170.126, subd. (f).) We conclude, consistent with the Attorney General's proposal, that interpreting section 1172.75 as incorporating the discretionary public safety determination of section 1170.126 would honor this concern and thus eliminate constitutional doubt. [9]

Guevara argues that he is entitled to the application of the revised penalty provisions of the Reform Act without a discretionary public safety inquiry, because section 1172.75, subdivision (d)(2) instructs courts to apply "changes in law that reduce sentences," and the prospective revised penalty provisions of the Reform Act constitute one such "change[] in law." (§ 1172.75, subd. (d)(2).) But Guevara's proposed incorporation is selective: Section 1170.126 is also a "change[] in law that reduce[s] sentences" for defendants like Guevara. (§ 1172.75, subd. (d)(2).) The critical question is, if section

---

[9] As we have explained, the legislative history suggests section 1170.126's discretionary public safety override was a key element in the balance struck by the voters. (§ 1170.126, subd. (f).) In exercising this discretion, the voters established that the resentencing court may consider: "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g)(1)–(3).) To harmonize the statutes, we construe the discretionary public safety determination and the factors the voters deemed relevant to that determination as operational through section 1172.75.

1172.75's language incorporates the ameliorative provisions of the Reform Act under 1170.126, why would it not also incorporate its substantive limitations?

Guevara finds support for his proposed selective incorporation in former section 1170, subdivisions (d)–(e) and habeas corpus, alternative resentencing mechanisms that existed at the time of the Reform Act's enactment. Guevara suggests that because defendants obtaining relief from Three Strikes sentences under these mechanisms are not required to satisfy section 1170.126's requirements to obtain resentencing, neither should he. This argument overlooks key differences between the relevant statutory schemes. For one, habeas corpus and former section 1170, subdivisions (d) and (e) predated the Reform Act's enactment. As we have described, the voters did not intend for the Reform Act to repeal or supersede preexisting resentencing mechanisms. Thus, there existed no constitutional conflict in the differing requirements of preexisting remedies, even where such remedies could conceivably be applied to third strike defendants.

But that the voters were aware of these narrow, preexisting resentencing mechanisms does not mean they anticipated the kind of mass resentencing relief, untethered to section 1170.126's substantive requirements, that Guevara's reading would sanction. Rather, Proposition 36's legislative history suggests the voters chose to moderate the Reform Act's retrospective changes through section 1170.126's discretionary public safety override, animated by a concern that dangerous third strike offenders would otherwise be released.

Perhaps more importantly, Guevara's analogy fails to grapple with the fact that the canon of constitutional avoidance

applies in cases involving an " ' "ambiguous statute that raises serious constitutional questions." ' " (*Leiva*, *supra,* 56 Cal. 4th at p. 507.) Section 1172.75's instruction to apply "changes in law that reduce sentences" is ambiguous. (§ 1172.75, subd. (d)(2).) The statute does not specify how to determine the relevant "change[] in law" in the context of the Three Strikes law's parallel prospective and retrospective provisions. (*Id.*)

The dissent takes issue with our conclusion that there exists ambiguity in section 1172.75's command that resentencing courts apply "changes in law that reduce sentences" (§ 1172.75, subd. (d)(2)), necessitating application of the constitutional avoidance doctrine. In the dissent's reading, "the relevant provisions that actually reduce a defendant's sentence are the amended portions of the Three Strikes law that generally preclude a third strike sentence for those with a current conviction for a felony that is not serious or violent." (Dis. opn. of Corrigan, J., *post*, at p. 8, citing §§ 667, subd. (e)(2)(c), 1170.12 subd. (c)(2)(C).) The dissent reasons that the public safety inquiry required by section 1170.126 cannot be construed as a "change[] in law that reduce[s] sentences" because this section instead merely "*constrained* courts in their ability to reduce the sentences imposed under the prior Three Strikes law." (Dis. opn. of Corrigan, J., *post*, at p. 7, italics in original.)

This interpretation does not eliminate the ambiguity we have identified. The dissent's recognition that different provisions of the Reform Act appear to have different primary focuses — one aimed at retroactive relief and one aimed at prospective reform — in fact highlights why this interpretive question is a difficult one. How and whether these different components should be applied in a resentencing mechanism

entirely distinct from the Reform Act is precisely why uncertainty exists in construing the Legislature's directive to apply "changes in law that reduce sentences" in section 1172.75 proceedings that involve indeterminate Three Strikes sentences.

Nor is it accurate to read section 1170.126 as merely "constrain[ing]" the ability of resentencing courts to grant relief. (Dis. opn. of Corrigan, J., *post*, at p. 7, italics omitted.) Section 1170.126, read as a whole, does not merely constrain the availability of relief. The Reform Act's petition process exists *because* the voters envisioned a mechanism that would "reduce[] [the] sentences" (§ 1172.75, subdivision (d)(2)), of prisoners presently serving indeterminate sentences under the Three Strikes law.[10]

Even assuming the dissent's characterization — that only section 1170.12, subdivision (c)(2)(C) and subdivision (e) of section 667 are the "changes in law that reduce sentences" — section 1170.126 directly incorporates these changes in law by express textual reference. Section 1170.126 provides that a previously sentenced Third Strike defendant may "request resentencing *in accordance with the provisions* of subdivision (e) of Section 667, and subdivision (c) of Section 1170.12, as those statutes have been amended by the act that added this section."

---

[10] The dissent seems to suggest that section 1172.75 requires courts to proceed subdivision by subdivision within a particular "change in law" and *only* apply those subdivisions which directly "reduce" sentences and ignore all contrary requirements, even if substantive. But we do not believe this is the only way to construe section 1172.75, subdivision (d)(2).

(§ 1170.126, subd. (b), italics added.)[11] Thus, in applying 1172.75's "changes in law" provision, we must grapple with *how* to apply section 1170.126.

The dissent asserts that we are misapplying the doctrine of constitutional avoidance by "rewriting" section 1172.75. (Dis. opn. of Corrigan, J., *post*, at pp. 3, 4, 15.) Yet the dissent accepts the premise that "choice [is] permitted under the constitutional avoidance doctrine" when there are reasonable "competing interpretations of the statutory language." (Dis. opn. of Corrigan, J., *post*, at p. 6.) The canon of constitutional avoidance instructs that courts " 'will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable.' " (*In re Friend* (2021) 11 Cal.5th 720, 734.) Given the inherent ambiguity in how to apply the ambiguous "changes in law" provision of section 1172.75 in this context, and the constitutional questions raised by not incorporating section 1170.126's substantive requirements, the case to incorporate the public safety exception is "not only

---

[11] The dissent claims that section 1170.126, though clearly incorporating changes in law that reduce sentences, "simply gives a procedural path to seek relief under those referenced provisions as the voters amended them." (Dis. opn. of Corrigan, J. at p. 8.) But a "procedural path to seek relief" may also plausibly be considered a law that reduces sentences. (*People v. Hardin* (2024) 15 Cal.5th 834, 856 [discussing "recently enacted ameliorative statutes" which allow for recall and resentencing, including section 1172.6 and former section 1170, subdivision (d)].) Assuming arguendo that the distinction proposed by the dissent is a plausible one, the existence of two reasonable interpretations does not eliminate ambiguity.

plausible, but compelled by the canon of constitutional avoidance." (*Ibid*.)

In sum, as a matter of constitutional avoidance, we decline to adopt Guevara's interpretation of section 1172.75, subdivision (d)(2). Applying the revised penalty provisions of the Reform Act at a section 1172.75 resentencing without the substantive limitations contemplated by the voters would pose a "difficult constitutional question[]." (*In re Smith* (2008) 42 Cal.4th 1251, 1255.) Because ambiguity exists, construing the Reform Act's substantive limitations as operational through section 1172.75's instruction to apply relevant "changes in law" harmonizes the two statutes and renders section 1172.75 " 'free from doubt as to its constitutionality.' " (*Wendland, supra,* 26 Cal.4th at p. 548.)

> 4. *Other provisions of section 1170.126 do not conflict with section 1172.75.*

Respondent argues that simply construing section 1172.75 as incorporating section 1170.126's discretionary public safety inquiry does not eliminate doubts as to that section's constitutionality. This argument echoes the reasoning of the Court of Appeal below, which concluded that applying the ameliorative penalty provisions of section 1170.12 at a section 1172.75 resentencing would constitute an impermissible amendment of the Reform Act because it would "render[] void . . . the provisions of section 1170.126[] requiring the filing of a petition, [and] the deadline for filing the petition." (*Guevara II, supra*, 97 Cal.App.5th at p. 984.)

We agree with respondent that it would raise significant constitutional questions to interpret section 1172.75 as permitting resentencing of third strike defendants absent the

Reform Act's substantive conditions on entitlement to relief. But the substantive criteria we have construed as operational through section 1172.75 differ from the ancillary procedural requirements, identified by respondent and amici curiae, that defendants must satisfy to obtain relief through a standalone section 1170.126 petition. Harmonization does not require the incorporation of the provisions of section 1170.126 that merely establish the *manner* of pursuing relief by petition.

### a.   *The filing of a petition under section 1170.126.*

The Court of Appeal concluded that allowing Guevara to proceed under section 1172.75 to seek resentencing on his indeterminate third strike sentence, without separately filing a petition under 1170.126, itself violates the commands of the Reform Act. (*Guevara II, supra*, 97 Cal.App.5th at p. 984.) This argument fails. Through section 1170.126, subdivision (k), the voters expressly authorized nonserious, nonviolent third strike offenders like Guevara to seek relief through "any rights or remedies otherwise available." (§ 1170.126, subd. (k).) Alternative remedies, such as section 1172.75, a petition for habeas corpus, or recall and resentencing under former section 1170, subdivision (d) (now contained in section 1172.1, subdivision (a)), invariably have distinct procedures from those associated with a standalone section 1170.126 petition. Our interpretation harmonizes the statutes by construing section 1172.75 as incorporating the substantive requirements of section 1170.126. But honoring the voters' intent does not require reading the procedural requirements of a standalone section 1170.126 petition into all other resentencing mechanisms.

Respondent attempts to obviate this distinction, equating various procedures relevant to defendants seeking relief through a section 1170.126 petition as substantive requirements.[12] For instance, respondent contends that the timing of recall pursuant to section 1172.75 unconstitutionally amends the Reform Act. Respondent argues that section 1170.126 requires a dangerousness determination before a nonserious, nonviolent third strike defendant's sentence is recalled for resentencing, while recall under section 1172.75 precedes this determination. (§ 1170.126, subd. (f).)

Harmonization does not require that section 1172.75 mirror the nonsubstantive order of operations relevant to defendants pursuing relief through section 1170.126 petitions.[13]

_____

[12] The parties do not raise whether the manner of disqualification is a substantive or procedural provision of section 1170.126. We therefore do not decide whether section 1172.75, subdivision (d)(2) incorporates section 1170.126, subdivision (f)'s method of disqualification of nonserious, nonviolent third strike offenders from second strike sentencing. (§§ 1170.12, subd. (c)(2)(C), 1170.126, subd. (f).)

[13] The dissent criticizes our ruling as an effort to "pick and choose which requirements to apply" which it claims runs "directly counter to the voters' intent that Prop. 36 be applied as a cohesive whole." (Dis. opn. of Corrigan, J., *post*, at pp. 13–14.) But several of the requirements of the section 1170.126 recall petition process are clearly specific to those petitions, and are not reasonably incorporated under section 1172.75, subdivision (d)(2)'s "changes in law" language. For instance, one subdivision of section 1170.126 sets forth specific pleading requirements for petitions under that section. (§ 1170.126, subd. (d).) Another sets forth procedures for a defendant to waive his appearance in court. (§ 1170.126, subd. (i).) The dissent does not claim, and could not plausibly assert, that each of these procedural

Section 1170.126's technical processes are inapplicable at a resentencing pursuant to other mechanisms, like section 1172.75, which have separate procedural requirements that defendants must fulfill. (§ 1170.126, subd. (f); § 1172.75, subds. (b)–(d).) Indeed, it would make little sense to construe section 1172.75 as incorporating the procedural provisions of a standalone section 1170.126 petition, given that defendants seeking relief through alternative remedies are simply not filing section 1170.126 petitions. Various procedural vehicles may contain distinct technical details, but this does not suggest that the voters intended for these procedures to serve as conditions on relief for other vehicles. Rather than impose such a limitation, the voters expressly contemplated and preserved alternative procedural vehicles through section 1170.126, subdivision (k). (§ 1170.126, subd. (k).)

The question of whether the voters intended a given provision as a substantive requirement for relief can only be answered by determining whether satisfying a particular condition fulfills the twin purposes of the statute we have previously identified — effecting ameliorative reform while protecting public safety. (*Conley, supra,* 63 Cal.4th at p. 658

_____

minutiae "are necessary predicates for relief under that initiative." (Dis. opn. of Corrigan, J., *post*, at p. 12.) In short, not *all* of the mechanics specific to a 1170.126 petition speak to the core inquiries of whether a petitioner is eligible for, and entitled to retroactive resentencing as, an individual who poses no threat to public safety. As a result, we are left with the admittedly difficult task of ascertaining which requirements the voters would consider substantive conditions on relief and which were procedural requirements specific to those seeking relief through the section 1170.126 resentencing process.

[finding that the voters enacted the Reform Act to "strike a balance between these objectives of mitigating punishment and protecting public safety"].) Interpreting section 1172.75 as incorporating section 1170.126's public safety override honors the voters' substantive concern. Defendants whose third strike sentences are recalled pursuant to section 1172.75, but whom the resentencing court determines, in its discretion, would pose an unreasonable risk to public safety are not entitled to resentencing pursuant to the revised penalty provisions of the Reform Act. (§§ 1172.75, subd. (c), 1170.126, subd. (f).) Respondent provides no explanation for how permitting recall before or after determining eligibility has any effect on public safety.

Nor does the legislative history offer support for such a claim. Proposition 36's legislative history discusses the timing of eligibility determinations only in relation to permitting *resentencing*, and does not even mention recall of sentence. (See Voter Information Guide, Gen. Elec. (Nov. 6, 2012) analysis of Prop. 36 by Legis. Analyst, p. 50 ["Courts conducting these resentencing hearings would first determine whether the offender's criminal offense history makes them eligible for resentencing. The court would be required to resentence eligible offenders unless it determines that resentencing the offenders would pose an unreasonable risk to public safety"].) The timing of recall under section 1172.75 does not undermine the electorate's substantive public safety objectives; rather, the statute's incorporation of section 1170.126's discretionary public safety override maintains the balance struck by the voters between reform and safety.

### b. Two-year deadline.

Respondent and amici curiae suggest that the statutes cannot be harmonized by construing section 1170.126's public safety inquiry as operational at a section 1172.75 resentencing, because the two-year deadline in section 1170.126 was intended as a critical limitation on relief.

Although not conclusive evidence, the language of the good cause provision itself, contained in section 1170.126, subdivision (b), suggests that it was meant to apply only to the petition process, and not globally to alternate vehicles for resentencing carved out by section 1170.126, subdivision (k). Section 1170.126, subdivision (b) explains that defendants serving indeterminate terms under the Three Strikes law "may *file a petition for a recall of sentence*, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause[.]" (§ 1170.126, subd. (b), italics added.) The language specific to a "petition for recall of sentence" itself suggests that the two-year deadline and good cause exception were procedural requirements for defendants to bring a recall and resentencing petition under section 1170.126.[14] Thus, these provisions appear to focus the timing of

---

[14] Section 1170.126, subdivision (f), which contains the operative public safety determination, has similar language referencing a "recall of sentence under this section." (§ 1170.126, subd. (f).) However, as we have discussed, the entire purpose of the 1170.126 petition process is to allow retroactive, ameliorative relief while ensuring that public safety is protected. Thus, unlike the two-year deadline and good cause exception, provisions related to public safety cannot be described as mere procedural requirements limited to recall and resentencing petitions under section 1170.126. They are instead

recall and resentencing petitions under section 1170.126, and would not apply to other resentencing vehicles preserved by subdivision (k). Moreover, as the dissent notes, section 1172.75 does not require a defendant to "file" any request for relief. (Dis. opn. of Corrigan, J., *post*, at p. 3 ["under section 1172.75*, the defendant does not file a petition* to invalidate a prison prior enhancement; the *CDCR initiates the process*"], italics added.)

Respondent and the dissent point to the Legislative Analyst's analysis, which described a "one-time cost to the state and counties related to the resentencing provisions of this measure," and anticipated that "counties would incur jail costs to house inmates during resentencing proceedings. These costs could be a few million dollars statewide over a couple of years." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) analysis of Prop. 36 by Legis. Analyst, p. 50.) Both argue that the voters therefore understood there would be "one-time" resentencing expenses, and those expenses would only last "a couple of years." (*Ibid.*; see dis. opn. of Corrigan, J., *post*, at p. 2)

This legislative history does not suggest the electorate understood the two-year petition deadline as a condition on resentencing for defendants like Guevara, who sought relief under a *distinct statutory mechanism*. The Legislative Analyst's estimate reflects the anticipated expenses associated with standalone petitions for resentencing under section 1170.126. The voters contemplated that the petition process would result in "one-time" expenses that would last approximately two years. But the Legislative Analyst did not purport to provide cost estimates for alternative remedies expressly preserved by

the substantive foundations of the Reform Act's retroactive provisions.

section 1170.126, subdivision (k). Rather than evince a constitutional conflict, the legislative history materials invoked by respondent and the dissent reflect the electorate's understanding of the costs and timing for adjudicating standalone section 1170.126 petitions.

The Reform Act itself contemplated that resentencings pursuant to the revised penalty provisions of the Three Strikes law would be conducted beyond the two-year window. Section 1170.126 expressly permits resentencing beyond a "couple of years" — notwithstanding the Legislative Analyst's categorical characterization — upon a showing of "good cause." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) analysis of Prop. 36 by Legis. Analyst, p. 50; § 1170.126, subd. (b); *Carman v. Alvord* (1982) 31 Cal.3d 318, 330 (*Carman*) ["Election materials may be helpful but are not conclusive in determining the probable meaning of initiative language"]; *San Francisco Taxpayers Assn. v. Bd. of Supervisors* (1992) 2 Cal.4th 571, 580 ["The case for rejecting the Legislative Analyst's views is . . . more compelling . . . where the contradiction is in the language of the initiative"].) A narrow reading of the Legislative Analyst's description of "one-time costs" would also require ignoring section 1170.126, subdivision (k), which expressly protects "any rights or remedies otherwise available to the defendant" without superimposing a two-year deadline on defendants' access to pre-existing resentencing mechanisms. (§ 1170.126, subd. (k).) The statutory text — as relevant here, the "good cause" provision and subdivision (k) — must prevail over ballot materials that offer incomplete summaries of the enacted law, "regardless of any insufficient recitals in the instructions to voters or the arguments . . . accompanying the text of the proposed measure." (*Wright v. Jordan* (1923) 192 Cal. 704, 713.)

Moreover, analyses of a law's fiscal impact cannot always anticipate costs that might arise due to laws not in effect at the time such analyses were undertaken. Such estimates are, instead, merely a snapshot in time. For instance, the dissent accepts that habeas corpus petitions might lead to resentencing of defendants serving indeterminate terms under the Three Strikes law. (Dis. opn. of Corrigan, J., *post*, at p. 12.) Yet when the Reform Act was enacted in 2012, no one foresaw the significant expansion of the scope of habeas corpus later created as a result of the Racial Justice Act and its subsequent amendments, for example. (See §1473, subd. (e); Assem. Bill No. 2542 (2019–2020 Reg. Sess.); Assem. Bill No. 256 (2021–2022 Reg. Sess.).) Similarly, here, the Legislative Analyst who analyzed the fiscal impacts of the Reform Act did not account for additional costs, outside the two-year window, that might arise because of Senate Bill No. 483 and its interaction with the Reform Act, events that would not occur for over a decade.

Other legislative history materials suggest that costs beyond the two-year window were contemplated. For example, the Attorney General's circulating Official Title and Summary anticipated continuing costs beyond the two-year petition deadline, observing that the measure would result in "[i]ncreased state and county costs in the millions to low tens of millions of dollars annually *in the first few years, likely declining substantially in future years*, for state court activities and county jail, community supervision, and court-related activities." (Cal. Secretary of State Certification, June 11, 2012, italics added.) The circulating Title and Summary thus contemplated that costs would persist after the "first few years," while finding it "likely" that in "future years" there would be a reduction — but

not elimination — of costs associated with "state court activities" like resentencing. (*Id.*)

Legislative history materials and the statutory text enacted by the voters thus counsel against "assum[ing] that [the Legislative Analyst's] brief comments," as narrowly construed by respondent, "accurately reflected the full intent of the drafters or the understanding of the electorate." (*Carman, supra,* 31 Cal.3d at p. 331.)

In sum, the two-year deadline in the Reform Act is most naturally understood as a procedural deadline for filing petitions under section 1170.126 itself. Thus, Guevara need not satisfy the two-year deadline to seek relief under section 1172.75.[15]

---

[15]     Even assuming, however, that the two-year deadline is a substantive requirement that should apply, its "good cause" exception may well be satisfied here. (§ 1170.126, subd. (b).) As articulated by Justice Greenwood in her concurring and dissenting opinion in *People v. Superior Court* (*Williams*) (2024) 102 Cal.App.5th 1242, 1264 (Williams), " 'resentencing under section 1172.75 may constitute "good cause" for the petitioner to file . . . past the two-year filing deadline of subdivision (b).' " (*Id.* at p. 1268 (conc. and dis. opn. of Greenwood, J.).) As Justice Greenwood notes, "[u]pon recall, the resentencing court was required to consider the entire judgment anew; the court's consideration was not limited to that portion of the aggregate sentence attributable to the prior conviction enhancements invalidated by section 1172.75." (*Id.* at p. 1271.) Indeed, section 1170.126 itself requires that the trial court, in making the public safety determination, assess the defendant's entire "criminal conviction history." (§ 1170.126, subd. (g)(1).) Because the elimination of the one-year prior prison term enhancement changes Guevara's "conviction history," it arguably provides

### D. The Counterarguments Raised by Real Party in Interest and Amici Curiae Are Unpersuasive.

##### 1. *Harmonizing sections 1170.126 and 1172.75 is consistent with subdivision (l).*

As amicus curiae, the California District Attorneys Association, suggests applying the revised penalty provisions of the Reform Act through section 1172.75 would contravene subdivision (*l*) of section 1170.126. Subdivision (*l*) establishes that "[n]othing in this and related sections is intended to

---

good cause to request reconsideration of the public safety determination outside the Reform Act's two-year window.

The dissent, citing *People v. Valencia* (2021) 64 Cal.App.5th 641, 649, which held that "rehabilitative progress" alone does not constitute good cause under section 1170.126, subdivision (b), contends that "if the Legislature's mere enactment of section 1172.75 provides blanket 'good cause' for reassessment of the court's prior finding that a defendant posed an unreasonable risk of danger to public safety (§ 1170.126, subd. (f)), then the majority has allowed the Legislature to do indirectly what it could not do directly, i.e., to simply eliminate the good cause requirement without a proper amendment of Prop. 36." (Dis. opn. of Corrigan, J., *post*, at p. 15, fn. 4.) We have no need to express an opinion on the holding of *Valencia*, as we have held that Guevara is not required to satisfy the two-year deadline for filing a petition to recall his sentence under the Reform Act. Regardless, this case is distinguishable from *Valencia*. In that case, defendant's claim of "rehabilitative progress" was a universal exception available to all Three Strike defendants. Here, there is no such global exception that could be characterized as "erasing the limitations period" for the statute. (*Valencia,* at p. 649.) Instead, we merely recognize that a legislative change affecting a defendant's conviction history may arguably supply "good cause" to *temporarily extend* the limitations period for a *select group* of indeterminate Third Strike defendants, whose resentencing was permissible under 1170.126, subdivision (k).

diminish or abrogate the finality of judgments in any case not falling within the purview of this act." (§ 1170.126, subd. (*l*).) Section 1170.126, subdivision (*l*) does not bolster amici curiae's position, because it is section 1172.75 by its express terms — not any section of the Reform Act — that reopens sentencing, by requiring the elimination of now-invalid prison priors and providing for a full resentencing.

Furthermore, section 1170.126, subdivision (*l*) ensures the Reform Act and "related sections" do not diminish the finality of only those cases falling beyond the scope of "this act" — that is, the Three Strikes law as amended by the Reform Act. (§ 1170.126, subd. (*l*).) But the nonserious, nonviolent third strike cases at issue are prototypical Three Strikes law cases; they cannot be characterized as "case[s] not falling within the purview of this *act*" under subdivision (*l*). (*Id.,* italics added.)

### 2. *The meaning of "presently serving" in section 1170.126.*

Real Party in Interest and the Attorney General argue that "the plain terms of [section 1170.126] do not apply to Mr. Guevara." They echo the position of the dissent below. Upon verifying Guevara was serving a term with now-invalid prior prison term enhancements, the trial court was "required to recall Guevara's sentence," at which point he was no longer a defendant "presently serving an indeterminate term of imprisonment" and thus not subject to the substantive conditions in section 1170.126. (*Guevara II, supra,* 97 Cal.App.5th at pp. 990–991 (dis. opn. of Baltodano, J.).) Instead, Guevara argues, he is entitled to resentencing under only the prospective provisions of the Reform Act.

Respondent initially argued that " 'presently serving an indeterminate term of imprisonment' refers to individuals who were serving such a term in 2012 when the Reform Act took effect." (*Williams, supra*, 102 Cal.App.5th at p. 1263.) Respondent subsequently argued that even if "presently serving" means "currently serving," defendants like Guevara "were both 'presently serving an indeterminate term' on the effective date of section 1170.126 and are 'currently serving such an indeterminate term.' "

The phrase "presently serving" is ambiguous. In ordinary parlance, "present" means "now existing or in progress," "being in view or at hand," "now existing; at hand" and "presently" means "at once," "at the present time," or "now." (Merriam-Webster's Collegiate Dict. (11th ed. 2012) p. 982; Black's Law Dict. (9th ed. 2009) p. 1302.) "Current" means "presently elapsing" or "occurring in or existing at the present time." (Merriam-Webster's Collegiate Dict. (11th ed. 2012) p. 306.) Because these dictionary definitions overlap, Guevara concludes that "presently serving" means "currently serving." But "currently serving" could either refer to defendants "currently serving" at the time the Reform Act took effect, or those "currently serving" at the time of their section 1172.75 resentencing. Dictionary definitions alone thus shed little light on the meaning of "presently serving" in section 1170.126.

Guevara argues that the two-year deadline in section 1170.126, subdivision (b) establishes that the drafters knew how to impose a limit by reference to the "effective date of the act" when they wished to do so. Subdivision (b) establishes that petitions for a sentence recall may be filed "within two years after the effective date of the act that added this section or at a later date upon a showing of good cause." (§ 1170.126, subd. (b).)

Because section 1170.126, subdivision (a) applies to those "presently serving" rather than defendants "serving as of the effective date of the Act," Guevara argues we should construe "presently serving" to mean defendants serving indeterminate third strike terms at the time of a resentencing pursuant to section 1172.75. But "our cases do not 'dictate to legislative drafters the forms in which laws must be written.'" (*Conley*, *supra*, 63 Cal.4th at p. 656.) Instead, we "require 'that the [legislative body] demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.'" (*Id*. at pp. 656–657.)

The neighboring provisions of section 1170.126 arguably support the opposite interpretation of "presently serving." (*Dyna-Med, supra,* 43 Cal.3d at p. 1387 ["The words of the statute must be construed in context"].) Section 1170.126, subdivision (a) establishes that only persons "presently serving" indeterminate terms pursuant to the Three Strikes law, who would not have received an indeterminate life sentence under the Reform Act, may file a petition pursuant to section 1170.126. (§ 1170.126, subd. (a).) Section 1170.126, subdivision (b) describes the process by which those defendants may file a petition: "Any person serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12 upon conviction, whether by trial or plea, of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7, may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause." (§ 1170.126, subd. (b).) That subdivision (b) sets a filing deadline for "[a]ny

46

person serving" an indeterminate third strike sentence to file a petition by reference to "the effective date of the act" arguably suggests the voters likewise intended for subdivision (a) to refer to those defendants serving as of the effective date of the Reform Act. (*Id.*, subds. (a)–(b).)

Ultimately, we need not decide this question. The ambiguity of the phrase "presently serving" does not disturb the initiative's legislative history, which suggests the electorate contemplated that previously sentenced nonserious, nonviolent third strike offenders would not be entitled to resentencing under the revised penalty provisions of the Reform Act if the trial court, in its discretion, determined that resentencing would pose an "unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) At minimum, resentencing Guevara under the prospective provisions of the Reform Act without a discretionary public safety determination would be in strong tension with voter intent in enacting Proposition 36. Our interpretation of section 1172.75's ambiguous instruction to apply "changes in law that reduce sentences" as incorporating the Reform Act's retrospective public safety inquiry eliminates this constitutional doubt, and in doing so, obviates the need to resolve the meaning of "presently serving" in section 1170.126, subdivision (a). (§§ 1172.75, subd. (d)(2), 1170.126, subd. (a).)

### 3. *Real Party in Interest's reading is not required to avoid absurd results.*

Guevara argues that it would be an absurd result for "people convicted of extremely violent crimes," albeit people not previously sentenced to Third Strike indeterminate terms, to be "eligible for 'full resentencing' consideration by virtue of section 1172.75" but for Real Party in Interest, convicted of a nonserious, nonviolent crime, to be prohibited from "avail[ing]

himself of the same resentencing opportunity." As we interpret section 1172.75, Real Party in Interest is entitled to a full resentencing provided that he can satisfy the substantive eligibility criteria established in section 1170.126 to obtain resentencing pursuant to the revised penalty provisions of the Reform Act. This is not an absurd result. In enacting the Reform Act, the voters struck a balance between mitigating harsh punishment and protecting public safety. While reasonable minds may differ on the wisdom of the balance they struck, the choice is one appropriately reserved to the voters. (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53 ["The judiciary, in reviewing statutes . . . may not undertake to evaluate the wisdom of the policies embodied in such legislation"].)

## III. DISPOSITION

The judgment of the Court of Appeal is reversed. The case is remanded to the Court of Appeal with instructions to remand the case to the superior court.[16] If the superior court determines that resentencing Real Party in Interest pursuant to the revised penalty provisions of the Reform Act would "pose an

---

[16] Where "a sentencing court was not fully aware of the scope of its discretionary powers, 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Salazar* (2023) 15 Cal.5th 416, 425.) The record does not "clearly indicate" the trial court would have resentenced Real Party in Interest pursuant to the revised penalty provisions of the Reform Act " ' "even if it had been aware that it had such discretion." ' " (*Id.*) Rather, the trial court expressed "concern[] . . . for public safety," but concluded that it had "no choice but to resentence him under Penal Code Section 1172.75."

unreasonable risk of danger to public safety," the court shall reimpose an indeterminate term.[17]  (§ 1170.126, subds. (f)–(g).) If the superior court does not determine that resentencing Real Party in Interest would "pose an unreasonable risk of danger to public safety," and Real Party in Interest is otherwise eligible under the Reform Act, the court shall resentence Real Party in Interest pursuant to the revised penalty provisions of the Reform Act.[18]  (§§ 1170.126, subds. (f)–(g), 1170.12, subd. (c)(1), (2)(C), 1172.75, subd. (c).)

---

[17]   The resentencing court is not bound by the prior dangerousness determination associated with Guevara's section 1170.126 petition.  Rather, section 1172.75 requires that the resentencing court makes a new determination as to whether a defendant's resentencing would "pose an unreasonable risk of danger to public safety" as of the present day. (§ 1170.126, subd. (f).)  A prior finding that a particular defendant poses a risk to public safety under section 1170.126, subdivision (f) is unquestionably relevant, and will no doubt be given consideration by a court subsequently resolving a resentencing under section 1172.75 involving an indeterminate Three Strikes sentence.  However, given significant passage of time, it is possible that a defendant who once presented a threat to public safety may no longer do so.  For instance, not only may defendants present evidence that they have significantly rehabilitated since a prior section 1170.126 proceeding, but serious illness or advanced age may have substantially reduced the danger to public safety they once posed.  Realistically assessing such changed circumstances is appropriately left to the trial court on remand.

**EVANS, J.**

**We Concur:**

**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

PEOPLE v. SUPERIOR COURT (GUEVARA)

S283305

Dissenting Opinion by Justice Corrigan

The voters by initiative enacted the Three Strikes Reform Act of 2012 (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)) (Prop. 36 or the Initiative) "to reduce the punishment prescribed for certain third strike defendants." (*People v. Conley* (2016) 63 Cal.4th 646, 651 (*Conley*).) *Conley* held the voters intended that those defendants who had already been sentenced by the time of the Initiative's passage "are not entitled to automatic resentencing, but instead may seek resentencing by petitioning for recall of sentence under [Penal Code] section 1170.126." (*Id.* at p. 652; see *id.* at pp. 654–662.) Penal Code[1] section 1170.126, added by the Initiative, created a petition procedure that allowed defendants to request a recall of their Three Strikes sentences "within two years after the effective date of the act that added this section or at a later date upon a showing of good cause" (§ 1170.126, subd. (b)). Under Prop. 36's petitioning procedure, qualified defendants are entitled to resentencing "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)). As the majority notes, Guevara's 2013 petition for resentencing under section 1170.126, which was filed within the specified two-year filing window, was denied. The trial court concluded that if his Three

---

[1]     Subsequent statutory references are to the Penal Code.

1

Strikes sentence were modified, he would pose an unreasonable risk of danger to public safety.  (Maj. opn., *ante*, at p. 8.)

The principles of *In re Estrada* (1965) 63 Cal.2d 740 and its progeny are not involved here.  Guevara's sentence has long been final.  It is also important to note that the Initiative added a statute providing for a single two-year petition procedure.  Voters were explicitly told they were voting for a temporally defined, one-time resentencing system.   The Legislative Analyst's statement described the resentencing procedure as a "one-time cost" that would only last for "a couple of years." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) analysis of Prop. 36 by Legis. Analyst, p. 50; see *People v. Superior Court (Williams)* (2024) 102 Cal.App.5th 1242, 1263; *People v. Valencia* (2021) 64 Cal.App.5th 641, 650 (*Valencia*).)

Section 1172.75 is a statute enacted by the Legislature years after the passage of Prop. 36.  The question here is whether that later action improperly amends Prop 36.  It does. Under section 1172.75, if a court determines that a defendant's sentence includes a now-invalid prior prison term enhancement, the court "shall recall the sentence and resentence the defendant" (§ 1172.75, subd. (c)) and "shall apply the sentencing rules of the Judicial Council *and apply any other changes in law that reduce sentences* or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing" (*id*., subd. (d)(2), italics added).  The legislative provision does not simply remove additional one-year terms based on its invalidation of state prison prior enhancements.  It specifically attempts to authorize full resentencing of Three Strikes defendants in a manner not provided for by Prop. 36. The majority's application of section 1172.75, as permitting full Three Strikes resentencing, beyond the removal of a one-year

enhancement term, endorses this legislative overreach and is contrary to the intent of the voters when they passed the Initiative. In permitting the statute to allow *full* resentencing, including modification of a properly imposed Three Strikes sentence, the majority adopts an interpretation which violates the explicit requirements of the Initiative.

Under the Legislature's newly-added code section, a recall and resentencing procedure is automatic when the court receives notice from the California Department of Corrections and Rehabilitation (CDCR). (See § 1172.75, subd. (c).) Indeed, under section 1172.75, the defendant does not file a petition to invalidate a prison prior enhancement; the CDCR initiates the process. As drafted by the Legislature, there is also no need for the defendant to file a resentencing petition under section 1172.126, as Prop. 36 requires. Because no petition is required, there is no need to demonstrate that there is good cause for filing a resentencing request beyond the two-year window set out in the Initiative.

In rewriting the statute to permit full resentencing of pre-Prop. 36 Three Strikes cases under the guise of constitutional avoidance, the majority allows the Legislature to change the Initiative in constitutionally prohibited ways. The majority permits the Legislature to do something that was never intended by the voters and to take that action without the Legislative procedures constitutionally required to amend the electorate's Initiative.

The issue here is that section 1172.75 was neither passed with a two-thirds vote of both legislative houses nor approved by a majority of the electorate as the Initiative requires for amendment of its provisions. (See Prop. 36, as approved by

voters, Gen. Elec. (Nov. 6, 2012), § 11.)  Thus, to the extent that section 1172.75 purports to allow automatic resentencing that goes beyond removal of the now-nullified state prison prior enhancement, the Legislature's action constitutes an unconstitutional attempt to amend an initiative statute.  "The Legislature may amend or repeal an initiative statute by another statute that becomes effective *only* when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c), italics added.)

The majority purports to solve this problem by simply rewriting section 1172.75 to include the same public safety inquiry applicable under Prop. 36's section 1170.126.  The majority suggests this is proper under the doctrine of constitutional avoidance.  Yet we have cautioned that " '[i]t is our task to construe, not to amend, the statute.  "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted . . . ." [Citation.]  We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1008.)  But this is exactly what the majority has done.  For the reasons discussed below, the majority misapplies the tool of constitutional avoidance to support its novel statutory interpretation.  The attempt is also flawed because it fails to actually solve the constitutional problem presented here.  The majority's decision today will give Guevara, 12 years after his section 1170.126 petition was denied, another bite at the same apple, all without having to petition for resentencing or to show good cause for a late or

successive petition as the Initiative mandates.  The majority's decision exceeds our role as a court and subverts the initiative process itself.  As a result, I cannot join my colleagues in the majority.

It is important to be clear just what constitutional principle is involved here.  The various changes to the Three Strikes schemes on which Guevara relies do not flow from constitutional provisions barring excessive punishment or to any other challenge to its alternative sentencing scheme. (Cf. *In re Coley* (2012) 55 Cal.4th 524, 560.)  Instead, in 2012, the electorate passed the Initiative to mitigate some of the more stringent provisions of the original Three Strikes scheme.  It did so, however, by exercising its authority to limit legislative attempts to further modify the specific reforms contained in Prop. 36.  The voters' authority to do so, by requiring a specified legislative majority, is not contested here.  It is the legislative attempt to undermine the voters' action that is the constitutional issue.

The initiative power is "not . . . a right granted the people, but . . . a power reserved by them.  Declaring it 'the duty of the courts to jealously guard this right of the people' [citation], the courts have described the initiative and referendum [authority] as articulating 'one of the most precious rights of our democratic process.'  [Citation.]  '[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.'" (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 (*Associated Home Builders*); see *Castellanos v. State of California* (2024) 16 Cal.5th 588, 601–602.)

### A. THERE IS NO STATUTORY AMBIGUITY JUSTIFYING APPLICATION OF CONSTITUTIONAL AVOIDANCE

Constitutional avoidance is an established approach that aids courts in interpreting statutes. "When a question of statutory interpretation implicates constitutional issues, we are guided by the precept that ' "[i]f a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable." ' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1373.) But the choice permitted under the constitutional avoidance doctrine is between competing plausible interpretations of the statutory language. Constitutional avoidance does not encompass judicial authority to amend an otherwise clear but improperly enacted statute, like the one here.

The high court has repeatedly warned that "this canon 'has no application in the absence of statutory ambiguity.' " (*United States v. Palomar-Santiago* (2021) 593 U.S. 321, 329; see also *Department of Homeland Security v. Thuraissigiam* (2020) 591 U.S. 103, 133; *McFadden v. United States* (2015) 576 U.S. 186, 187; *Warger v. Shauers* (2014) 574 U.S. 40, 50.) "The canon is not a method of adjudicating constitutional questions by other means. [Citations.] Indeed, one of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions. It is a tool for choosing between *competing plausible interpretations of a statutory text*, resting on the reasonable presumption that Congress did not intend the

6

alternative which raises serious constitutional doubts." (*Clark v. Martinez* (2005) 543 U.S. 371, 381, second italics added.) To apply the doctrine, "the statute must be *realistically* susceptible of two interpretations . . . ." (*People v. Anderson* (1987) 43 Cal.3d 1104, 1146; see *United States v. Stevens* (2010) 559 U.S. 460, 481 (*Stevens*).)

The majority finds ambiguity in section 1172.75, subdivision (d)(2): "Section 1172.75's instruction to apply 'changes in law that reduce sentences' is ambiguous. (§ 1172.75, subd. (d)(2).) The statute does not specify how to determine the relevant 'change[] in law' in the context of the Three Strikes law's parallel prospective and retrospective provisions." (Maj. opn., *ante*, at pp. 29–30.) The majority suggests "[o]ur interpretation of section 1172.75's ambiguous instruction to apply 'changes in law that reduce sentences' as incorporating the [Initiative's] retrospective public safety inquiry eliminates . . . constitutional doubt . . . ." (Maj. opn., *ante*, at p. 47.)

This strained search for ambiguity is neither a fair nor plausible reading of section 1172.75, subdivision (d)(2). Simply put, the public safety inquiry referenced by the majority did *not* constitute a "change[] in law that reduce[s] sentences . . . ." (§ 1172.75, subd. (d)(2).) Instead, the public safety inquiry *constrained* courts in their ability to reduce the sentences imposed under the prior Three Strikes law. The section in which the public safety inquiry appears clarified the voters' determination to modify the Three Strikes sentencing scheme going forward and to allow those serving Three Strikes sentences to petition for resentencing under delineated circumstances and within a limited time frame unless good cause is shown. A section 1170.126 petition allows an already-

7

sentenced defendant to "request resentencing in accordance with the provisions of subdivision (e) of Section 667, and subdivision (c) of Section 1170.12, as those statutes have been amended by the act that added this section." (§ 1170.126, subd. (b).) Thus, under Prop. 36, the relevant provisions that actually reduce a defendant's sentence are the amended portions of the Three Strikes law that generally preclude a third strike sentence for those with a current conviction for a felony that is not serious or violent. (See §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) Its petition procedure, and the public safety inquiry described therein, simply gives certain offenders a procedural path to seek relief under those referenced provisions as the voters amended them. (See *Conley*, *supra*, 63 Cal.4th at p. 653.) It does not, itself, constitute a "change[] in law that reduce[s] sentences" under section 1172.75, subdivision (d)(2).

Further, as noted, the Legislature's section 1172.75 includes its own and different public safety inquiry, providing the court must impose a lesser sentence "unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) When enacting section 1172.75, the Legislature created a different public safety inquiry with its own delineated factors (see § 1172.75, subd. (d)(3)) and burden of proof that would supplant the approach set out in Prop. 36. It is not plausible that the Legislature simultaneously intended to adopt Prop. 36's public safety inquiry as well, thus creating a statutory scheme with two conflicting standards of proof.

Constitutional avoidance is a tool for choosing between competing interpretations of a statute as written. Even if an interpretation of a statute would remove some potential

constitutional doubt, "we may adopt it only if we can see it in the statutory language." (*Iancu v. Brunetti* (2019) 588 U.S. 388, 397.) Here, section 1172.75, subdivision (d)(2)'s command to apply "any other changes in law that reduce sentences" cannot plausibly be understood to include the public safety provision of a petition procedure that itself applies a different statute to reduce sentences. "We cannot press statutory construction 'to the point of disingenuous evasion' even to avoid a constitutional question." (*United States v. Locke* (1985) 471 U.S. 84, 96.) The majority misapplies constitutional avoidance as a device to simply rewrite section 1172.75 in an attempt " ' "to conform it to constitutional requirements . . . ." ' " (*Stevens*, *supra*, 559 U.S. at p. 481.) The attempt fails to do so for two reasons. First, as noted, there are not two competing plausible interpretations for the statutory language. The Legislature made its intent quite clear in the language it chose. Second, as explained below, it does not solve the problem that the Legislature's statute was not passed as the Initiative requires.

### B. THE MAJORITY OPINION DOES NOT AVOID THE CONSTITUTIONAL PROBLEM IN ANY CASE

The constitutional problem the majority seeks to avoid is that the Legislature overstepped its authority to amend a voter initiative by ignoring the constitutional requirements for doing so. (Cal. Const., art. II, § 10, subd. (c).) But the proper way to avoid that problem, if possible, is to interpret section 1172.75 in a manner that does not constitute an amendment. Even after the majority has engrafted section 1170.126's public safety inquiry onto a resentencing under section 1172.75, this new, judicially created statute still improperly amends the Initiative's careful delineation of when a previously sentenced

defendant may receive retroactive application of the amended Three Strikes provisions.

Under "article II, section 10, subdivision (c) [of the California Constitution], an amendment includes a legislative act that changes an existing initiative statute by taking away from it." (*People v. Kelly* (2010) 47 Cal.4th 1008, 1026–1027; see *People v. DeLeon* (2017) 3 Cal.5th 640, 651.) The majority properly rejects as an improper amendment Guevara's position that he should be fully resentenced without Prop. 36's public safety inquiry. It reasons: "Guevara's reading would allow the Legislature, by a simple majority, to eliminate section 1170.126's conditioning of relief upon a court's discretionary public safety determination, arguably contravening the Act's express amendment limitation. Indeed, by Guevara's logic, the Legislature could enact a statute, absent a two-thirds vote, providing for global recall and resentencing of all nonviolent, nonserious third strike sentences, without any consideration of public safety. Such an enactment would plainly contravene voter intent and the express amendment limitation provision of the [Initiative]." (Maj. opn., *ante*, at p. 26.)

Yet the majority then purports to eliminate other express conditions for relief under section 1170.126, based on an artificial distinction between "substantive criteria," such as the public safety inquiry, and what it calls "ancillary procedural requirements," such as the need to timely file a resentencing petition or to show good cause for filing a petition outside the two-year window. (Maj. opn., *ante*, at pp. 33–34; see also *id.* at pp. 34–42.) This characterization, in itself, works an improper amendment of the Initiative because these conditions are mandated by Prop. 36 in the same way as the public safety inquiry. The majority suggests that these conditions, which it

seeks to eliminate as "nonsubstantive," need not be given the effect the voters intended because "defendants seeking relief through alternative remedies are simply not filing section 1170.126 petitions," and "the voters expressly contemplated and preserved alternative procedural vehicles through section 1170.126, subdivision (k)." (Maj. opn., *ante*, at pp. 35, 36; see also *id*. at pp. 15–19.)

Section 1170.126, subdivision (k) does not assist the majority. That provision states: "Nothing in this section is intended to diminish or abrogate any rights or remedies *otherwise available* to the defendant." (§ 1170.126, subd. (k), italics added.) By its plain terms, this provision simply means that the petition procedure under section 1170.126 was not intended to preclude a defendant from gaining relief from a third strike sentence by means *other* than application of Prop. 36. We said as much in *Conley*, where the defendant, who was sentenced before the Initiative's passage, argued he was entitled to automatic retroactive application of the new law because his case was still pending on appeal under the rule of *In re Estrada*, *supra*, 63 Cal.2d at pages 744–748. We rejected the claim: "Subdivision (k) contains no indication that automatic resentencing — as opposed to, for example, habeas corpus relief — ranks among the 'rights' the electorate sought to preserve. A careful reading of the statute points to the opposite conclusion: The voters authorized defendant and others similarly situated to seek resentencing under the recall provisions of section 1170.126, but they did not intend to confer a right to automatic resentencing under the amended penalty provisions of the [Initiative]." (*Conley*, *supra*, 63 Cal.4th at pp. 661–662.)

Here, Guevara is not invoking a right or remedy "otherwise available" to him through other potential avenues for relief. He is relying on Prop. 36 itself. The majority admits this fact by importing Prop. 36's public safety inquiry into section 1172.75's recall and resentencing scheme. But it cannot do so selectively. Prop. 36's procedures are necessary predicates for relief under that initiative. It is inaccurate for the majority to characterize the two-year window and showing of good cause requirements as nonsubstantive. It is certainly true that the voters intended to create a procedural avenue for relief under the Initiative. That avenue was not intended to exclude other recognized rights and remedies like habeas corpus. But the specific remedy the voters enacted was the one they articulated and which was explained in the Legislative Analyst's statement: a petition filed within two years or a showing of good cause for the failure to do so. The voters manifestly did not contemplate an open-ended opportunity for the Legislature to undo their enactment except as the Initiative requires.

The majority attempts to distinguish *Conley*, suggesting that section 1172.75 constitutes "a separate 'right[] or remed[y]' protected by subdivision (k), unlike the untethered 'automatic resentencing' which the defendant in *Conley* attempted to use to circumvent the section 1170.126 petition process." (Maj. opn., *ante*, at p. 19.) This is a distinction without a difference. *Conley* teaches that the voters who enacted Prop. 36 "did not intend to confer a right to automatic resentencing under the amended penalty provisions of the [Initiative]," full stop. (*Conley*, *supra*, 63 Cal.4th at p. 662.) But that is exactly what the Legislature intended to achieve with section 1172.75's mandate to apply "changes in law that reduce sentences." (§ 1172.75, subd. (d)(2).) Through section 1170.126, subdivision (k), the voters

acknowledged that other laws might result in a defendant's third strike sentence being overturned. What the electorate did *not* contemplate is that relief under Prop. 36 would be available without going through the procedures mandated in section 1170.126.[2] *Conley* recognized the *Estrada* rule must yield to the will of the voters who enacted the Initiative. But so too must section 1172.75. And so too must this court in discharging its duty to " 'jealously guard the right of the people' " by honoring the initiative and referendum process as " 'one of the most precious rights of our democratic process.' " (*Associated Home Builders*, *supra*, 18 Cal.3d at p. 591.)

Section 1170.126, subdivision (k) does not support the majority's distinction between "substantive" and "procedural" requirements of section 1170.126's petition procedure. The majority suggests that "[t]he question of whether the voters intended a given provision as a substantive requirement for relief can only be answered by determining whether satisfying a particular condition fulfills the twin purposes of the statute we have previously identified — effecting ameliorative reform

---

[2]    The majority acknowledges that "at resentencing under this section [i.e., section 1172.75,] [defendant] invokes the reforms of Proposition 36," but insists application of section 1172.75 is akin to habeas relief and the "distinction between resentencing as a result of a section 1172.75 proceeding and a resentencing through a successful habeas corpus petition or other resentencing mechanism is unavailing." (Maj. opn., *ante*, at p. 25.) Regardless of what potential remedies might be available to a defendant through habeas corpus, the question here is whether *the Legislature*, without a proper amendment of Prop. 36, may enact a statute that purports to allow retroactive application of the amended penal provisions of the Three Strikes law that circumvents the petition procedure of section 1170.126. For the reasons discussed, it may not constitutionally do so.

while protecting public safety." (Maj. opn., *ante*, at p. 36.) Not so. The answer to this question is found in the language enacted by the voters, which makes no such distinction and provides that *any* amendment of its provisions requires a statute passed by two-thirds of the Legislature or by a majority vote of the electorate. (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012), § 11.) In passing Prop. 36, voters took care to distinguish it from some other initiatives that allow future legislative amendments so long as they further its goals. (See, e.g., Prop. 57, as approved by voters, Gen. Elec. (Nov. 8, 2016), § 5 [The Public Safety and Rehabilitation Act of 2016]; Prop. 9, as approved by voters, Gen. Elec. (Nov. 4, 2008), § 9 [Victims' Bill of Rights Act of 2008: Marsy's Law].) The majority's effort to pick and choose which requirements to apply runs directly counter to the voters' intent that Prop. 36 be applied as a cohesive whole.[3]

---

[3] Noting other minor requirements of the petition procedure under section 1170.126, the majority suggests "not *all* of the mechanics specific to a 1170.126 petition speak to the core inquiries of whether a petitioner is eligible for, and entitled to retroactive resentencing as, an individual who poses no threat to public safety. As a result, we are left with the admittedly difficult task of ascertaining which requirements the voters would consider substantive conditions on relief and which were procedural requirements specific to those seeking relief through the section 1170.126 resentencing process." (Maj. opn., *ante*, pp. 35–36, fn. 13.) But pointing to the absurdity of incorporating all the requirements of section 1170.126 into a resentencing under 1172.75 only serves to underscore that we should not be attempting to determine what aspects of section 1170.126 are "core" provisions, a distinction the electorate did not make in enacting Prop. 36 and its petition procedure for retroactive application of the amended Three Strikes law.

By the majority's logic, the Legislature, by a bare majority, could simply do away with the good cause requirement for late section 1170.126 petitions or, indeed, the requirement of a petition for relief altogether, because they are merely judicially dubbed "procedural" requirements.[4]  But by creating a "special mechanism for application of the new lesser punishment to persons who have previously been sentenced" (*Conley*, *supra*, 63 Cal.4th at p 658), the electorate clearly contemplated that its enacted mechanism would be the means by which already-sentenced third strikers could receive retroactive application of the Initiative's provisions.  Yet by rewriting section 1172.75 to incorporate only the public safety provision of section 1170.126, the majority has done what the Legislature could not

---

[4]      The majority reasons that, even assuming the good cause showing needed for a late petition under section 1170.126 constituted a substantive requirement, the enactment of section 1172.75 provides such good cause:  "Because the elimination of the one-year prior prison term enhancement changes Guevara's 'conviction history,' it arguably provides good cause to request reconsideration of the public safety determination outside the [Initiative's] two-year window." (Maj. opn., *ante*, p. 42, fn. 15; see § 1170.126, subd. (g)(1).)   But if the Legislature's mere enactment of section 1172.75 provides blanket "good cause" for reassessment of the court's prior finding that a defendant posed an unreasonable risk of danger to public safety (§ 1170.126, subd. (f)), then the majority has allowed the Legislature to do indirectly what it could not do directly, i.e., to simply eliminate the good cause requirement without a proper amendment of Prop. 36.  The majority's result is " 'tantamount to erasing the limitations period from the statute . . . .' " (*Valencia*, *supra*, 64 Cal.App.5th at p. 649.)

constitutionally do directly: circumvent the requirements of section 1170.126 without a proper amendment of the Initiative.[5]

## C. THE PROPER DISPOSITION

The majority's engrafting of section 1170.126's public safety provision onto a section 1172.75 resentencing does violence to the language of both statutes. The majority has added an extra requirement for relief that appears nowhere in the Legislature's statute while allowing a defendant to receive full resentencing without following the resentencing procedure set out in the Initiative. Ultimately, a proper disposition requires we interpret section 1172.75 in a manner that does not infringe upon the carefully constructed petition procedure established by section 1170.126. This approach is readily available but eschewed by the majority.

Section 1172.75 declared that prior prison term enhancements for a non-sexually violent offense imposed before January 1, 2020, are "legally invalid" (§ 1172.75, subd. (a)), and a new sentence generally "shall result in a lesser sentence than

---

[5] The majority asserts that "when a defendant is being resentenced pursuant to a *separate* vehicle, section 1172.75[,] . . . allowing resentencing outside of the two-year window without establishing the good cause necessary to file a late section 1170.126 petition does not unconstitutionally amend the [the Initiative]." (Maj. opn., *ante*, at pp. 26–27.) However, as discussed, that "separate" vehicle, as interpreted by the majority, allows retroactive application of the amended Three Strikes law's lesser penalty provisions without the need for a resentencing petition under section 1170.126, a remedy not contemplated by the electorate when enacting Prop. 36. This result contravenes the Initiative and falls outside the scope of "any rights or remedies otherwise available to the defendant" as stated in section 1170.126, subdivision (k).

the one originally imposed as a result of the elimination of the repealed enhancement" (§ 1172.75, subd. (d)(1)). As we recently observed in *People v. Rhodius* (2025) 17 Cal.5th 1050 (*Rhodius*): "The reference to a 'lesser' sentence is reasonably understood to mean, as a general matter, that courts must lessen the burdens of the sentence relative to 'the one originally imposed as a result of the elimination of the repealed enhancement' (§ 1172.75, subd. (d)(1)) — in other words, the new sentence must eliminate the adverse effects flowing from the now-invalid section 667.5(b) enhancements." (*Id.* at p. 1060.)

Cases involving section 1172.75 resentencing of Three Strikes defendants sentenced before the Initiative have allowed the trial court to strike the now-invalid prior prison term enhancements. This approach furthers the legislative intent to eliminate "the adverse effects flowing" from those additional one-year terms. (*Rhodius*, *supra*, 17 Cal.5th at p. 1060.) However, as some courts have recognized, a defendant need not be resentenced as if "writing on a blank slate." (*People v. Kimble* (2024) 99 Cal.App.5th 746, 757 (*Kimble*); see *People v. Terwilligar* (2025) 109 Cal.App.5th 585, 601.) As *Terwilligar* reasoned: "Keeping in mind the presumption that the Legislature was aware of the [Initiative's] resentencing provision [citation], and that application of the [Initiative's] revised penalty provisions outside the two-year window and without the mandated determination of dangerousness would constitute an unconstitutional amendment of Proposition 36, it makes sense that section 1172.75 allows for the possibility that a sentence of the original length will be reimposed. Therefore, we believe section 1172.75 and section 1170.126 are best harmonized by construing section 1172.75 not to authorize imposition of a sentence contrary to section 1170.126, which

itself specifies the prospective scope of application of the revisions to third-strike defendants sentenced before its enactment." (*Terwilligar*, at p. 602.)

The proper remedy here is to allow the trial court to strike the now-invalid prior prison term enhancements but reinstate the previously imposed Three Strikes sentence. This approach would both effectuate the intent of the Legislature while honoring that of the electorate. Numerous courts, including the majority below, have recognized this as the proper disposition. (See *People v. Superior Court (Williams)*, *supra*, 102 Cal.App.5th at p. 1267; *People v. Santos* (2024) 100 Cal.App.5th 666, 677; *Kimble*, *supra*, 99 Cal.App.5th at pp. 750, 759; *People v. Superior Court (Guevara)* (2023) 97 Cal.App.5th 978, 983, 988, review granted Mar. 12, 2024, S283305.) By contrast, no court has reached the conclusion arrived at by the majority today, not even the separate opinion in *People v. Superior Court (Williams)*, *supra*, 102 Cal.App.5th 1242, upon which we solicited supplemental briefing. (See *id*. at pp. 1268–1274 (conc. & dis. opn. of Greenwood, P. J.).) I would affirm the judgment of the Court of Appeal below.

In sum, our precedents are clear: We may not rewrite statutes " 'merely to eliminate a potential constitutional conflict.' " (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 635, quoting *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826.) The majority misapplies the doctrine of constitutional avoidance to rewrite section 1172.75 in a manner that facilitates the result it seeks. In doing so, the majority also fails in its duty to " 'jealously guard this right of the people' " reflected in the initiative and referendum process. (*Associated Home Builders*, *supra*, 18 Cal.3d at p. 591.) I respectfully dissent.

**CORRIGAN, J.**


**I Concur:**

**GUERRERO, C. J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Superior Court (Guevara)

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 97 Cal.App.5th 978
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S283305
**Date Filed:**  October 9, 2025

_____

**Court:**  Superior
**County:**  Santa Barbara
**Judge:**  Von T. Nguyen Deroian

_____

**Counsel:**

John T. Savrnoch, District Attorney, and Marguerite Clipper Charles, Deputy District Attorney, for Petitioner.

Gregory D. Totten and David R. Boyd, Deputy District Attorney (Sacramento), for the California District Attorneys Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Tracy Macuga, Public Defender, Laura Arnold, Deputy Public Defender; Michael S. Romano and Susan Champion for Real Party in Interest.

Michael S. Romano; David Mills; George Gascón; Heidi Rummel; and Michael Vitiello for Three Strikes Project as Amicus Curiae on behalf of Real Party in Interest.

Molly O'Neal and Damon Silver, Public Defenders (Santa Clara), Brandon Li, Deputy Public Defender; Brian Matthews, Alternate Defender (Santa Clara); Sylvia Perez MacDonald; and William Safford for the Santa Clara County Public Defender, Alternate Defender and Independent Defense Counsel Office as Amici Curiae on behalf of Real Party in Interest.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Theresa A. Patterson, Wyatt E. Bloomfield and Christopher G. Sanchez, Deputy Attorneys General, for the Attorney General as Amicus Curiae, upon the request of the Court of Appeal.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Marguerite Clipper Charles
Deputy District Attorney
1112 Santa Barbara Street
Santa Barbara, CA 93101
(805) 568-2445

David R. Boyd
Deputy District Attorney
901 G Street
Sacramento, CA 95814
(916) 591-0294

Susan Champion
Three Strikes Project
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 736-7757